UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MERIT HEALTH RIVER REGION,

     *Plaintiff*,

  v.

ROBERT F. KENNEDY, Jr., *Secretary of Health and Human Services*,

     *Defendant*.

Civil Action No. 23-906 (TJK)

**MEMORANDUM OPINION**

    Plaintiff is an acute health care provider that contested certain Medicare reimbursements by filing two administrative appeals with the Provider Reimbursement Review Board of the Department of Health and Human Services. The Board dismissed the appeals because Plaintiff failed to file certain papers on time. Plaintiff moved for reinstatement, explaining that the employee in charge of preparing the submissions fell ill and passed away. But the Board denied the motion for failing to show good cause. So Plaintiff sued the Secretary of Health and Human Services, challenging both Board decisions under the Administrative Procedure Act. The parties now cross-move for summary judgment. For the reasons below, the Court will grant Defendant's motion and deny Plaintiff's.

**I.    Background**

    **A.    Statutory and Regulatory Background**

    Medicare is a federally funded program that reimburses healthcare providers for delivering medical care to qualifying elderly and disabled individuals. *See* 42 U.S.C. § 1395 *et seq.*; *Ne. Hosp. Corp. v. Sebelius*, 657 F.3d 1, 2 (D.C. Cir. 2011). The Centers for Medicare and Medicaid Services Division ("CMS"), which administers this program, uses administrative contractors to

calculate and disburse reimbursement amounts. *See id.* §§ 1395kk-1, 1395ww(d). At the end of each fiscal year, participating healthcare providers file annual costs reports with these contractors, 42 C.F.R. § 413.20(b), and the contractors issue notices indicating which payments Medicare will cover, *id.* 405.1803(a). "[D]issatisfied" providers can appeal reimbursement decisions to the Provider Reimbursement Review Board ("Board"), an administrative tribunal within the Department of Health and Human Services ("HHS" or "the Department"). 42 U.S.C. § 1395oo(a). The Board's decisions are final unless HHS's Secretary—acting through the CMS Administrator—"reverses, affirms, or modifies" the Board. *Id.* § 1395oo(f)(1); *see* 42 C.F.R. § 405.1868(d)(2). From there, a provider may seek judicial review. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877(b).

Congress gave the Board "full power and authority to make rules and establish procedures" governing the appeals and review process. *See* 42 U.S.C. § 1395oo(e). The Department's regulations reflect that authority. *See* 42 C.F.R. § 405.1868(a). Among other things, they permit the Board to "[d]ismiss [an] appeal with prejudice" if "a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order." *Id.* § 405.1868(b)(1). Alternatively, in that situation, the Board may issue a show cause order or take other remedial action. *Id.* § 405.1868(b)(2)-(3).

Also relevant are the Board's rules governing deadlines for so-called final position papers, which set forth the facts, authorities, and arguments related to the reimbursement decision at issue. *See* PRRB Rules 25, 27.[1] If a provider timely notices its appeal and complies with certain pre-hearing procedures, the Board must issue a Notice of Hearing. *See* Rule 30.1. That notice

---

[1] *See* Provider Reimbursement Review Board Rules Version 3.2, available at https://www.cms.gov/files/document/current-prrb-rules-v-32-board-order-no-4-december-15-2023.pdf (effective Dec. 15, 2023).

establishes a hearing date and the deadline for final position papers. Rules 27.1, 30.1; *see* 42 C.F.R. § 405.1853(b)(1). While the Board has "discretion to extend the deadline for submi[ssion]," 42 C.F.R. § 405.1853(b)(2), a final position paper is "mandatory," Rule 27.1. So missing the due date "may result in dismissal of the case." Rule 27.1 (emphasis removed). Yet another Rule underscores that providers must "comply with Board procedures or filing deadlines" and permits the Board to dismiss an appeal "on its own" for failing to do so. Rule 41.2. Even so, "the Board may reinstate [the] case" if a provider "demonstrat[es] good cause." Rule 47.3. But under the Board's rules, "administrative oversight, settlement[,] or a change in representative" are not good enough reasons to do so. *Id.*

Finally, the Board "maintains contact" throughout its proceedings with a provider's "case representative"—an attorney, consultant, or provider employee—whose actions "are considered to be those of the provider." Rule 5.1. The representative "is responsible for" "[m]eeting the Board's deadlines." Rule 5.2.

### B. Factual and Procedural History

Plaintiff is a Medicare-participating health care facility that provides acute medical care to a disproportionate share of low-income patients. ECF 1 ("Compl.") ¶ 6. The parties' dispute concerns Plaintiff's administrative appeals that challenged its calculated reimbursement amounts for fiscal years 2011 and 2013. *Id.* ¶¶ 21, 24; Certified Administrative Record ("CAR") 227, 460. In both appeals, Quality Reimbursement Services ("QRS") served as its designated case representative. CAR 157–58, 402–03. Plaintiff, through QRS, timely noticed both appeals in October 2015 and May 2016. CAR 235, 469. The Board acknowledged them and set due dates for preliminary position papers—in July 2016 and June 2017—which both Plaintiff and the contractor met. CAR 220–33, 227–28, 453–66, 460–61. In March 2020, the Board issued an alert in response

to the COVID-19 public health emergency, suspending all Board-set deadlines from March 13, 2020, forward. *See* Alert 19.[2] That is, it encouraged parties to meet Board-set deadlines but stated they were not mandatory until further notice. *Id.*

The Board first scheduled a hearing in both appeals for July 2022, and submission due dates shortly before then, CAR 160–61, 404–05, but the parties agreed to a 180-day postponement, CAR 106. In November 2022, the Board withdrew Alert 19—effective December 7, 2022—and announced it would "hold parties to the deadline specified in" any "notice or correspondence issued on or after that date." *See* Alert 23[3] (emphasis removed). Around that time, the contractor moved to dismiss one issue from Plaintiff's appeals, CAR 111–50, 363–97, and Plaintiff responded to that motion on December 16, 2022, CAR 65–66, 321–22. Shortly before, on December 12, the Board sent Plaintiff a notice scheduling a hearing for both its appeals on April 18, 2023, and setting a January 18, 2023, deadline for its final position papers. CAR 109. It also warned that the "the Board will dismiss the case" if Plaintiff "misses its due date." *Id.*

On January 31, 2023, the Board dismissed Plaintiff's appeals. CAR 62–64, 318–20. It explained that Plaintiff "ha[d] not submitted its [final position paper] or filed any other correspondence with the Board" by January 18, and both the Board's rules and the Department's regulations "permit[ted] dismissal" for failing to meet that deadline. CAR 62–63, 318–19. Indeed, Plaintiff had been warned of that result, said the Board. CAR 64, 320. Three weeks later, Plaintiff moved for reinstatement. CAR 4, 260. It explained:

---

[2] Alert 19: Temporary COVID-19 Adjustments to PRRB Processes (March 25, 2020), https://www.cms.gov/files/document/prrb-alerts.pdf.

[3] Alert 23: Resumption of Normal Board Operations Following the Covid-19 Pandemic, Effective December 7, 2022; Request for Comments Regarding the Expedited Judicial Review Process (November 7, 2022), https://www.cms.gov/files/document/prrb-alerts.pdf.

4

> Quality Reimbursement Services, Inc. . . . would like to formally respond to the board's January 30, 2023 letters dismissing both cases. QRS received the Notice of Hearing for these cases on December 12, 2022; which set the Final Position Paper deadlines for January 18, 2023. The employee responsible for all of the Position Paper filings and deadlines, Dayani Ratnavira, was hospitalized in critical condition at that time and we are very sad to report that she subsequently succumbed to her illness. Dayani was part of the original team when QRS first opened for business and her loss was a very significant loss to our firm; and also a very large disruption to our ordinary operations. Due to this unfortunate event, the due dates for the final Position Papers for both of the two appeals was dismissed. QRS has now submitted both final Position Papers and respectfully requests a good cause exception to the missed due dates under PRRB rule 47.3.

*Id.* The Board, however, denied the motion. CAR 2–3, 258–59. "While the Board [was] sympathetic," it explained that "QRS failed to establish good cause to reinstate the case." CAR 3, 59. For one thing, "QRS ha[d] not provided specific dates around the illness and hospitalization" of its employee. *Id.* "If she was hospitalized 'at that time' in December," it was "unclear why someone else was not covering for her, especially given the size of QRS' docket before the Board." *Id.* Nor was it "[]clear . . . why someone else did not request an extension due to [the employee's] illness." *Id.* The employee was also "not listed as a user of the" document management system—three other QRS employees were—"and, as such, [wa]s not recorded as making any filings for QRS." *Id.* Indeed, the "record" suggested "that another QRS employee, Philip Payne, was monitoring the case because, on December 16, 2022, [he] filed a response to the Medicare Contractor's Motion to Dismiss." *Id.* And that "filing occurred *after* the December 12, 2022 Notice of Hearing was issued *but before* the January 18, 2023 due date" for Plaintiff's final position papers. *Id.* (emphases in original). So "[e]ven if Mr. Payne was not the typical internal QRS employee responsible for filing the" paper, "QRS had notice of the FPP due date and failed to timely file it[] *or* file an extension request." *Id.* (emphasis in original).

Plaintiff sued the Secretary of HHS, challenging the Board's decision to dismiss the appeals and deny their reinstatement. ECF No. 1; Compl. ¶¶ 36–39. Plaintiff says both actions

5

violate the Administrative Procedure Act ("APA").  First, Plaintiff argues, the Board's dismissal violated the APA because it misapplied its own rules and regulations.  Second, Plaintiff contends that the Board acted arbitrarily and capriciously when it denied Plaintiff's motion for reinstatement.  *Id.* ¶¶ 26–35; *see* ECF No. 14-1 at 9–16.  Both parties move for summary judgment.

## II.     Legal Standard

The APA governs judicial review of Medicare reimbursement disputes.  *See* 42 U.S.C. § 1395oo(f)(1).  Under that statute, the Court must "set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The Court's task is to ensure that the agency "considered the factors relevant to its decision and articulated a rational connection between the facts found and the choice made."  *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*, 709 F.3d 1, 8 (D.C. Cir. 2013) (citation omitted).  Agency action cannot withstand scrutiny if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before [it]."  *Id.*  But "courts are generally more deferential" when "the issues relate[] to how an agency manages its own cases and procedures," *Mills Peninsula Health Servs. v. Fink*, No. 23-cv-2328 (LLA), 2025 WL 445189, at *4 (D.D.C. Feb. 10, 2025), because it "alone" knows "its limited resources," *Nat. Res. Def. Council, Inc. v. SEC*, 606 F.2d 1031, 1056 (D.C. Cir. 1979).

In cases proceeding under the APA, the ordinary summary-judgment standard does not apply because the Court "sits as an appellate tribunal."  *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).  And in that role, the Court may only review the record "that was before the [agency] at the time [it] made [its] decision."  *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (citation omitted).  So it asks only "whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did."  *Albino v. United*

6

*States*, 78 F. Supp. 3d 148, 163 (D.D.C. 2015) (citation omitted).

**III.   Analysis**

Plaintiff challenges two Board actions. First, it argues the Board unlawfully dismissed Plaintiff's appeals because it misapplied its own its rules and regulations, which make clear that dismissal was discretionary, not mandatory. ECF No. 14-1 at 9–11. Second, Plaintiff contends that the Board arbitrarily and capriciously ignored the circumstances of Plaintiff's missed deadline when it refused to reinstate the appeals.

**A.   The Board Did Not Misinterpret the Relevant Rules and Regulations in Dismissing Plaintiff's Appeals**

Plaintiff argues that the Board misinterpreted its own rules and regulations in dismissing its appeals. To the contrary, the Board's dismissal of those appeals was a straightforward—and rather express—exercise of its discretionary authority to "dismiss [an] appeal with prejudice" for "fail[ure] to meet a filing deadline." 42 C.F.R. § 405.1868(b).

The Board first stated that Plaintiff had until January 18, 2023, to file its position paper but failed to comply. CAR 62, 318. Such "failure," the Board then explained, "*may* result in dismissal" under "Board Rule 27.1," just like "Board Rule 41.2 . . . *permits* dismissal" in those circumstances. CAR 62–63, 318–19 (emphases added). And finally, the Board grounded its "authority" to take such action in the Department's regulations, explaining that, under § 405.1868, "the Board *may* . . . [d]ismiss the appeal with prejudice." CAR 63, 319 (emphasis added). Contrary to Plaintiff's view, nowhere in its decision did the Board "expressly state[]" or "inextricably impl[y]" that dismissal was "required." ECF No. 14-1 at 9.

Grasping for straws, Plaintiff instead points to the Board's December notice setting the submission deadline, where the Board warned that "it will dismiss the case[]" if Plaintiff "misses its due date." ECF No. 14-1 at 9; *see* CAR 110. Thus, Plaintiff asserts that the Board's "otherwise

7

accurate interpretation" in the decision itself "should be adjudged as 'too little, too late.'" ECF No. 14-1 at 9. Not so. For starters, it is unclear why that administrative notice—rather than the Board's decision to dismiss the appeals itself—should carry any weight in the Court's analysis. What matters is the Board's decision, and that decision leaves no doubt that the Board understood its authority to dismiss was discretionary. In any event, that the Board stated in the notice that it would dismiss the case if Plaintiff missed the due date says nothing about whether the Board viewed that decision as discretionary or mandatory—after all, it did not say that it "must" dismiss the appeal. In the end, Plaintiff is right that the Board could have "impose[d] less drastic sanctions." ECF No. 14-1 at 10; *see id.* at 15–16.[4] That it chose dismissal, however, does not mean it viewed its hands as tied. To repeat, the Board made clear in its decision that it was exercising its discretion in dismissing Plaintiff's appeals. Plaintiff's strained argument that the Board somehow misunderstood its own authority lacks support in the record.

> **B.   The Board's Decision Not to Reinstate Plaintiff's Appeals Was Supported by Substantial Evidence and Was Otherwise Not Arbitrary or Capricious**

Plaintiff argues that the Board acted arbitrarily and capriciously when it denied its motion to reinstate the appeals. The Court disagrees. In deciding not to reinstate Plaintiff's appeals, the record "demonstrate[s] that the Board exercised its discretion in a manner that was rational and that it considered the factors relevant to the decision." *Novacare, Inc. v. Thompson*, 357 F. Supp. 2d 268, 272 (D.D.C. 2005).

As explained above, the Board "may reinstate a case dismissed for failure to comply with

---

[4] Plaintiff also appears to argue that the Board *had* to consider other options. ECF No. 15–16. But neither the Board's rules nor its regulations say that. Perhaps considering "a lesser sanction . . . should be a step in the path to the ultimate decision" to dismiss an appeal, but that "does not mean that the Board's explanation had to include express consideration of possible alternatives." *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 351 (4th Cir. 2001) (citing *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 51 (1983)).

Board procedures," but only if the provider "demonstrate[es] good cause." Rule 47.3. Plaintiff, through QRS, tried to make that showing by informing the Board that "[t]he employee responsible for all of the Position Paper filings and deadlines" fell ill and passed away. CAR 4, 260. That "unfortunate event" was "a very large disruption to [QRS's] ordinary operations" and caused it to miss the filing deadline. *Id.*

The Board carefully considered and rejected QRS's argument as showing good cause. *See* CAR 2–3, 258–59. First, it acknowledged that it "may reinstate" Plaintiff's appeals for good cause but stressed that an "administrative oversight" does not meet that standard. CAR 3, 259. Then it explained that QRS "provided [no] specific dates around [Ratnavira's] illness and hospitalization" and did not explain "why someone else was not covering for her" if she was hospitalized "at th[e] time" the papers were due. *Id.* Nor did QRS say "why," at the very least, "someone else did not request an extension." *Id.* The Board also stressed that QRS was on "notice" of the filing deadline, as "the record indicate[d] that another QRS employee . . . was monitoring the case." *Id.* And the employee QRS claimed was "responsible for all of the Position Paper filings and deadlines"—Ratnavira—was "not listed as a user" of the Board's document management system and "[wa]s not recorded as making any filings for QRS." CAR 3–4, 59–60. The Court is satisfied that the Board adequately considered the asserted reasons for QRS's delay and "carefully and clearly explained" why QRS did not show good cause. CAR 3, 59. Nothing more was required.[5]

Plaintiff's arguments to the contrary argument are unavailing. To begin, Plaintiff

---

[5] *See Novacare*, 357 F. Supp. 2d at 272–73 (Board's refusal not to reinstate appeal was not arbitrary or capricious where "the Board considered" that plaintiff's delay was "the result of a miscommunications between [Plaintiff] and its counsel" and "explained" that such "failure to communicate" did not "justify reinstatement"); *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 351 (4th Cir. 2001) ("It is evident from the Board's explanation that it amply considered the Hospital's proffered excuse.").

9

improperly asks the Court to consider information the Board did not have before it when it decided that QRS had not shown good cause. In support of its motion for summary judgment, Plaintiff filed an affidavit from QRS's president, James Ranvindran. ECF No. 14-2. He explains that QRS "for many years assigned the responsibility of preparing, drafting[,] and filing with the PRRB all requisite appeals . . . to one key employee, Ms. Dayani Ratnavira." *Id.* at 1. After the passing of Ratnavira's husband, she began working remotely. *Id.* And "unbeknown" to anyone at QRS, she "fell seriously ill" around December 2022. *Id.* at 2. She was "a very private individual" and "chose not to share any aspect of her illness," while "continu[ing] to accept, and respond to, office emails throughout the period of her undisclosed illness." *Id.* And when QRS learned about "the severity of [her] illness sometime in January 2023," everyone at QRS was "so consumed with shock and sadness" that "no one thought to turn to the list of Board deadlines." *Id.* Plaintiff contends that the Board "gave little, if any[,] thought to" these "compelling explanations for the delayed filing." ECF No. 14-1 at 14. But how could it? A key detail was not before the Board—Ranvindran's contention that no one at QRS knew about Ratnavira's illness until "sometime" in January 2023. That information would have helped fill some gaps the Board identified: why no one covered for her and why no one requested an extension. *See* CAR 3, 59. But the Court reviews an agency's action based on the "record that was before [it] at the time [it] made [its] decision." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (citation omitted). And based on that record, Plaintiff fails to show that the Board acted arbitrarily or capriciously in not reinstating the appeals.

Besides, even if the Board had been provided all the above information, it would still have been "rational" for it to conclude that QRS's failure to monitor and meet its client's deadline was an administrative oversight and not good cause for reinstatement. *In re Polar Bear*, 709 F.3d at 10. QRS says it is an experienced "hospital reimbursement specialist" that has been in business

10

for nearly thirty years. ECF No. 14-2. It has a sizeable docket before the Board. CAR 3, 59. And still, as Defendant notes, Plaintiff's affiant "does not explain why" QRS "did not have a process in place to ensure" that QRS "met its deadlines in Plaintiff's appeal." ECF No. 15 at 21. Further still, QRS had "multiple employees registered to make Board filings," CAR 3 n.4, a group that did not include Ratnavira, CAR at 3. So even on this record, it would have been "altogether reasonable for the Board" to question QRS's explanation that Ratnavira was solely responsible for preparing, drafting and filing QRS's final position papers, and meeting its deadlines. *High Country Home Health*, 359 F.3d at 1312. On top of that, to this day, Plaintiff has not explained why the QRS employee who filed a response to a pending motion just a few weeks before the position paper deadline failed to request an extension, or why no one did so as soon as QRS learned of Ratnavira's condition. And that Ranvindran can only say that QRS leadership learned of her illness "sometime" in January 2023 allows for the possibility that QRS had weeks to make such a request before the deadline.

The Court sympathizes with QRS's unexpected loss of a valued employee and does not mean to minimize how that loss may have impacted her coworkers. And it is unfortunate that, because of QRS's delay, Plaintiff is stuck with reimbursement decisions it thinks are wrong. But in the end, Plaintiff asks the Court to substitute its judgment for that of the Board, which it cannot do. *See Ascension Borgess Hosp. v. Becerra*, 557 F. Supp. 3d 122, 128 (D.D.C. 2021). The Court's role restricts to ensuring that the Board's decision was supported by substantial evidence and "reasonably explain[ed] . . . the bas[i]s for [its] action[]." *FirstHealth Moore Reg'l Hosp. v. Becerra*, 560 F. Supp. 3d 295, 303 (D.D.C. 2021). And here, the Court has no trouble concluding that it did.

## IV.    Conclusion

For all the above reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Cross-Motion for Summary Judgment.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 11, 2025